U.S. COURT OF APPEALS
RECEIVED
CLERK

DEC 2 1 2015

ATLANTA, GA.

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

### No. 15-11364 – *LL*

| | |
|---|---|
| WILLIAM JOHNSON, | * |
| | * |
| Plaintiff-Appellant, | * |
| | * |
| vs. | * |
| | * |
| STATE OF GEORGIA | * |
| AND CERTAIN AGENTS FOR SUCH, | * |
| CITY OF KENNESAW | * |
| and CERTAIN AGENTS FOR SUCH, | * |
| CITY OF HIRAM | * |
| And CERTAIN AGENTS FOR SUCH, | * |
| CITY OF NEWNAN | * |
| And CERTAIN AGENTS FOR SUCH | * |
| Defendant-Appellees. | * |

Appeal from the United States District Court

For the Northern District of Georgia

---

## BRIEF FOR APPELLANT
## WILLIAM JOHNSON

William Johnson, pro se
487 Pine Valley Road
Meansville, GA 30256
(770)468-3134

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

WILLIAM JOHNSON,                    *
                                    *
    Plaintiff-Appellant,       *
                                    *
                                    *    CASE NO.: 15-11364
vs.                                 *
                                    *
STATE OF GEORGIA                    *
AND CERTAIN AGENTS FOR SUCH,        *
CITY OF KENNESAW                    *
and CERTAIN AGENTS FOR SUCH,        *
CITY OF HIRAM                       *
And CERTAIN AGENTS FOR SUCH,        *
CITY OF NEWNAN                      *
And CERTAIN AGENTS FOR SUCH         *
    Defendant-Appellees.       *
                                    *

---

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (AMENDED)

**COMES NOW**, William Johnson, Plaintiff, humbly and respectfully in behalf of the above-styled cause of action, to respectfully submit his CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (AMENDED) and to show this Honorable Court that he believes, now, the following persons and entities to have at least some degree of interest in this appeal:

1. State Licensed Peace Officers that Arrested Plaintiff

2. Attorney General of the State of Georgia

3. City of Canton, Georgia

4. City of Hiram, Georgia

5. City of Kennesaw, Georgia

6. City of Newnan, Georgia

7. Georgia Department of Family and Children Services

8. Honorable William S. Duffey

9. State of Georgia

10. State of Georgia POST

11. Other Discoverable Individuals and Agencies


Respectfully submitted, this 21st day of ___December___ 2015.


_____
William Johnson, pro se
Plaintiff

487 Pine Valley Rd.
Meansville, GA 30256
(770)468-3134

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

WILLIAM JOHNSON,        *

        Plaintiff-Appellant,    *

                           *      CASE NO.:  15-11364

vs.                         *

                           *

STATE OF GEORGIA        *

AND CERTAIN AGENTS FOR SUCH,   *

CITY OF KENNESAW        *

and CERTAIN AGENTS FOR SUCH,   *

CITY OF HIRAM           *

And CERTAIN AGENTS FOR SUCH,   *

CITY OF NEWNAN          *

And CERTAIN AGENTS FOR SUCH    *

        Defendant-Appellees.    *

                           *

## STATEMENT REGARDING ORAL ARGUMENT

Please note Appellant's abbreviations to References to the Record explained on the first page of the Table of Citations.

Are Presumption of Innocence, Right to a Jury Trial, Due Process, Fundamental Fairness, Equality under the Law, Justice, Liberty, Privacy now nothing more than whispers in the New World Order of American Society?  Do aristocratic Entitlement and bureaucracy now trump the Supremacy Clause of the Constitution of the United States?

Appellant ("William") requests oral argument before this Honorable Court. William presented a Federal Trial Court in the Northern District of Georgia with a

triage of Constitutional infirmities traumatizing his Right to a Jury Trial, where his peers ("The People") could have found the facts to determine these Constitutional violations, all of which were ignited by illegal arrests (including excessive force to render William physically unconscious twice).    These injuries brought by paramilitary government employees were procedurally "covered up", de facto through a "code of silence", and William was denied medical treatment while being illegally detained.  William was denied his Due Process access to the Courts by the government Appellees herein to grieve his Constitutional claims.

When William grieved violations of his Federal Constitutional Rights before local authorities and local Courts, his claims were either ignored or quashed in a bureaucratic organization of statutes, laws, rules, policies, and procedures supposedly subordinate to the Supremacy of the Constitution of the United States. William's claims herein against the government and/or government agents were denied administratively.  Herein, a few Judges have usurped the role of the one and only fact finder for William's cases, with William never waiving his United States Constitutional Rights to a Jury Trial.  Additionally, his Constitutional Rights were suppressed through a State's administrative processes.

William complained in the Federal Trial Court that State Licensed and municipal-employed police officers illegally arrested him repeatedly for failing to display a State-issued driver's license when he was not driving and for declining to

answer investigatory questions.  Paramilitary police officers used excessive force when arresting William to include multiple facial injuries, facial scars, and being knocked unconscious on two occasions.  William was later charged with petty misdemeanors for these four arrests and adjudicated not guilty.  Yet, William spent over nine months in jail for crimes he did not commit and is still being held in intensive probationary custody because the Georgia Courts and the Federal Trial Court of the Atlanta Division have refused to reverse the Courts' "presumption of guilt" they have tattooed on William.  When intoxicated on Sam Adams of Constitutional Liberty, are poor patriots now subjects to the whims of the King's Tories?

> "Four score and seven years ago our fathers brought forth on this continent, a new nation, conceived in Liberty, and dedicated to the proposition that all men are created equal.  Now we are engaged in a great civil war, testing whether that nation, or any nation so conceived and so dedicated, can long endure. We are met on a great battle-field of that war...The brave men, living and dead, who struggled here, have consecrated it, far above our poor power to add or detract... It is rather for us to be here dedicated to the great task remaining before us -- that from these honored dead we take increased devotion to that cause for which they gave the last full measure of devotion -- that we here highly resolve that these dead shall not have died in vain -- that this nation, under God, shall have a new birth of freedom -- and that government of the people, by the people, for the people, shall not perish from the earth."  Abraham Lincoln's Gettysburg Address.

> "Our Right to a Jury Trial is derived from English law.  Often, English Judges were biased in favor of the King, not always ruling impartially. As such, the jury was an essential countervailing force against tyranny, insofar as the jury had every right to ignore a judge's

instructions, thwarting even the will of the King.  William Blackstone quoted:  "[T]he most transcendent privilege which any subject can enjoy, or wish for, that he cannot be affected either in his property, his liberty, or his person, but by the unanimous consent of twelve of his neighbours and equals."

Whereas English judges won their independence from the Crown in the Act of Settlement 1701, American colonial judges still served at the pleasure of the King. King George III of Great Britain abolished trial by jury in the Colonies, one of the main grievances precipitating the American Revolution. As America's Founding Fathers shared a perfect horror at the concept of arbitrary courts of justice, they incorporated the Right to Trial by Jury into the Bill of Rights, thereby restoring what soon-to-be United States Supreme Court Justice James Iredell described as that "noble palladium of liberty", and protecting it from the reach of future legislators. "[I]t is a most important and valuable amendment; and places upon the high ground of constitutional right the inestimable privilege of a trial by jury in civil cases, a privilege scarcely inferior to that in criminal cases, which is conceded by all to be essential to political and civil liberty."    Joseph Story's 1833 treatise Commentaries on the Constitution of the United States.

"The right of trial by Jury is a fundamental law, made sacred by the Constitution, and cannot be legislated away."   Vanhorne's Lessee v. Dorrance, 2 U.S. 304 (D.Pa. 1795) (Paterson, J, riding circuit). "The primary purpose of the Trial by Jury in America was to protect the public from corrupt or aristocratic judges:   The impartial administration of justice, which secures both our persons and our properties, is the great end of civil society. But if that be entirely intrusted to the magistracy,--a select body of men, and those generally selected, by the prince, of such as enjoy the highest offices of the state,--these decisions, in spite of their own natural integrity, will have frequently an involuntary bias towards those of their own rank and dignity. It is not to be expected from human nature, that the few should always be attentive to the good of the many… every tribunal, selected for the decision of facts, is a step towards establishing aristocracy—the most oppressive of all governments."    Senator Richard Henry Lee quoted.

The Framers intended to preserve the Trial by Jury as it existed in England, as a check on potential abuse of power by the government. John Adams explains, "As the Constitution requires that the popular branch of the legislature should have an absolute check, so as to put a peremptory negative upon every act of the government, it requires that the common people, should have as complete a control, as decisive a negative, in every judgment of a court of judicature."

Uncertainty in the law is a serious problem, insofar as the published precedent of courts in a common law system is supposed to constitute "a clear guide for the conduct of individuals, to enable them to plan their affairs with assurance against untoward surprise." Moragne v. States Marine Lines, 398 U.S. 375, 403 (1970).    But whereas a runaway jury poses a clear and present danger to that reliance interest, a runaway judge can pose an even greater peril. As Thomas Jefferson explained, "that [w]e all know that permanent judges acquire an esprit de corps; that, being known, they are liable to be tempted by bribery; that they are misled by favor, by relationship, by a spirit of party, by a devotion to the executive or legislative; that it is better to leave a cause to the decision of cross and pile than to that of a judge biased to one side; and that the opinion of twelve honest jurymen gives still a better hope of right than cross and pile does. It is left therefore, to the juries, if they think the permanent judges are under any bias whatever in any cause, to take on themselves to judge the law as well as the fact. They never exercise this power but when they suspect partiality in the judges; and by the exercise of this power they have been the firmest bulwarks of English liberty.""    Excerpts from Wikipedia article on "Jury Trial".

William's grievances and Constitutional questions herein are true tests of the strength of American Liberties and freedoms, warranting oral argument.

8e

# Table of Contents

TABLE OF CITATIONS ........................................................................i

STATEMENT OF SUBJECT-MATTER AND APPELLATE
JURISDICTION ...............................................................................1

STATEMENT OF THE ISSUES ...........................................................3

STATEMENT OF THE CASE ..............................................................7

    Statement of Material Facts and Proceedings Below ...........................7

    Standard of Review ......................................................................23

SUMMARY OF THE ARGUMENT .....................................................24

ARGUMENT AND CITATION OF AUTHORITIES ......................28

    Issue I ......................................................................................28

    Issue II .....................................................................................30

    Issue III ....................................................................................33

    Issue IV ....................................................................................34

    Issue V .....................................................................................40

    Issue VI ....................................................................................41

    Issue VII ...................................................................................43

    Issue VIII ..................................................................................44

    Issue IX ....................................................................................44

    Issue X .....................................................................................47

**Issue XI** ..........................................................................48

**Issue XII** .........................................................................52

**Issue XIII** ........................................................................59

**Issue XIV** ........................................................................60

**CONCLUSION** ..................................................................61

**CERTIFICATE OF COMPLIANCE**..................................62

**CERTIFICATE OF SERVICE**............................................63

# Table of Citations

## References to the Record

References to the appeal record for case # 1:13-cv- 03155 in Federal District Court will be designated by the letter "R" followed by the docket number and the page number of the item. For example, reference to a pleading appearing as docket entry no. 1, and reference therein to Page 1 will be referred to as follows: (R.1-1). Reference therein to page 1 of pleading entries with multiple numbered documents such as a docket entry labelled Doc 1-1 will be referred to as (R.1-1-1). Reference to the Petition for Writ of Habeas Corpus which accompanied Appellant's § 1983 suit appealed herein, case # 1:13-cv-03156, will be referenced as follows: (H.1-1).

The Record in this appeal, case #15-11364, will be referenced as (P Mtn-1), or page 1 of the scanned MOTION FOR LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS herein. (P Mtn Rply-1) is reference to page 1 of this Appellant's scanned Reply to the City Appellees' Response to Appellant's pauper motion. (Inj Mtn-1) is reference to page 1 of Appellant's scanned Motion for Injunction or Temporary Injunction. The Motion for Injunction or Temporary Injunction is 664 pages long with attached exhibits and lower Court documents. A sequence of page numbers will be referenced as (Inj Mtn-1>12), or pages one through twelve of the injunction motion. (Inj Rply-1) is reference to page 1 of Appellant's scanned Reply to the City Appellees' Response to the motion for injunction.

## Cases

Apprendi v. New Jersey, 530 U.S. 466 (2000). ..................................................56

Ayala v. State, 262 Ga. 704, 425 S.E.2d 282 (1993). ..........................................45

Ballew v. Georgia, 435 U.S. 223 (1978). ............................................................58

Bolden v. State, 256 Ga. App. 327 (2002)............................................................9

Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). ..51

Boykin v. Alabama, 395 U.S. 238 (1969) ...........................................................59

Boyer v. City of Orlando, 402 F.2d 966 (5th Cir. 1968). ..................................39,46

Brady v. Maryland, 373 U.S. 83 (1963).. ...........................................................59

Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979) ......30

Conley v. Gibson, 355 U.S. 41, 45-46,78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957).  ..28

Conn. Dep't of Environmental Protection v. O.S.H.A., 356 F.3d 226, 231 (2d Cir.2004) ...........................................................................................25,37

Cooper v. Pate, 378 U.S. 546, 546, 84 S.Ct. 1733, 1734,12 L.Ed.2d 1030 (1964)...41

Devi v Mukasey, 2008 WL 5412011, Not Reported in F.Supp.2d, United States District Court, E.D. California, No. 2:08–cv–2671 JFM (HC), Dec. 22, 2008 ..........55

Duncan v. Louisiana, 391 U. S. 145, 391 U. S. 155 (1968). ..................................56

Erdmann v. Stevens, 458 F.2d 1205, 1208 (2d Cir. 1972), cert. denied, 409 U.S. 889 (1972). ............................................................................................39,46

Ewumi v. State, 315 Ga. App. 656, 727 S.E.2d 257 (2012) .................................30

Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).........................38

Fernandez v. Wolff, 919 F. Supp. 1120 (N.D. Ill. 1996).... ...................................28

Fulp v State, 217 GaApp 603, 458 SE2d 395 (1995). ..........................................47

Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)..............58

Graham v. Connor, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). ...41

Green v. Orlando, 313 F.Supp. 583 (1970). .................................................39,46

Green v. State of Georgia, case # 1:11-cv-04544-AT, Doc. 23, pg. 16-17, quoting
Nazario v. State, 746 S.E.2d 109, 113 (Ga. 2013) ..............................................48

Harris v. Ivax Corp., 182 F.3d 799, 802 (11th Cir.1999).. ....................................23

Harris v. State, 314 Ga. App. 816, 726 S.E.2d 455 (2012).. ................................33

Haines v. Kerner, 1972, 404 U.S. 519,92 S.Ct. 594, 30 L.Ed.2d 652..........28,42,43,

Hiibel v. Sixth Judicial District of Nevada, Humbolt Co., Etal., 542 US 177, 124 S.Ct.
2451, 159 LE2d. 292 (2004)...........................................................................30

Huff v McLarty, 241 Ga 442, 246 SE2d 302 (1978). ...........................................21

Hulen v State, 207 GaApp 465, 428 SE2d 405 (1993).........................................47

Hunt v. Tucker, N.D.Ala., 875 F.Supp. 1487, affirmed 93 F.3d 735 (1995). .........44

Hutto v. Finney, 98 S.Ct. 256 (2008)................................................................38

Ibarra v. Olivarri, 587 F.2d 677, 677 (5th Cir. 1979)......................................42,51

In Re Blackburn, 168 Wash.2d 881, 232 P.3d 1091 (2010) ................................58

In re Winship, 397 U. S. 358 (1970). ...........................................................56,57

Johnson v. Regions Bank, Beck, Owen and Murray, Et al., case # 13-8955, U.S.
Supreme Court...........................................................................................49

Johnson v. Regions Bank, Et al., 301 Ga.App. 520, 687 S.E.2d 906 (2009). ..........49

Knapp v. State, 223 Ga. App. 267, 477 S.E.2d 621 (1996)...................................45

Kolender v. Lawson, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed. 903 (1983) ..............30

Law Students Civil Rights Research Council, Inc., v. Wadmond, 299 F. Supp. 117, 123 (S.D.N.Y. 1969) (three-judge court), aff'd, 401 U.S. 154 (1971)...............39,46

Marneigh v State, 271 Ga 883, 525 SE2d 362 (2000) (affirmed Thompson, Fulp, Huff, and Hulen, supra) ...................................................................47

Medtronic, Inc. v. Lohr, 56 F.3d 1335, 1341 (11th Cir. 1995).............................33

Miranda v. Arizona, 384 U.S. 436 (1966) .......................................................33

Mitchum v. Foster, 407 U.S. 225, 92 S. Ct. 2151, 32 L. Ed. 2d 705 (1972).......40,46

Morrissey v. Brewer, 408 U.S. 471, 488–89, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) .................................................................................55,57,60

Monroe v. Pape, 365 U.S. 167, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961)..............39,46

Nazario v. State, 746 S.E.2d 109, 113 (Ga. 2013). ...........................................48

Nicacio v. INS, 768 F.2d 1133, 1136 (9th Cir.1985), amended, 797 F.2d 700, 702 (9th Cir.1985) (cited in Deshawn, 156 F.3d at 344). .........................................25

Nazario v. State, 746 S.E.2d 109, 113 (Ga. 2013). ...........................................48

Pace v. Evans, 709 F.2d 1428 (11th Cir. 1983). ..........................................28,29

Russ v. Watts, 414 F.3d 783 (2005). ..............................................................60

Santosky v. Kramer, 455 U.S. 745 (1982). ......................................................60

Scheuer v Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)............38,42

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, (1984). ...................48,58

Taylor v. Gibson, 529 F.2d 709, 715-16 (5th Cir. 1976). ...............................43,51

Taylor v. McSwain, 335 F. App'x 32, 33 (11th Cir. 2009) (per curiam) (cited in the District Court's final order herein.). ...............................................................42

Tennessee v. Garner, 471 U.S. 1 (1985). .........................................................41

Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1869, 20 L.Ed.2d 889........................................9

Thompson v State, 240 Ga App 198, 523 SE2d 53 (1999). ...................................47

Tillman v. Massey, 281 Ga. 291, 637 S.E.2d 720 (2006) (GA precedent applying Strickland, supra to fundamentally unfair process to appellate review). .............48

United States v. Brown, 731 F.2d 1491 (11th Cir.1984), modified on other grounds, 743 F.2d 1505 (1984)...............................................................30

United States v. Carll, 105 U.S. 611 (1881). .....................................................55

United States v. Cruikshank, 92 U.S. 542 (1876). ...............................................55

US v Prescott, 581 F.2d 1343 (9th Cir. 1978). ..................................................31

## **Statutes**

28 U.S.C. §1331. .........................................................................................1

28 U.S.C. § 1291. .......................................................................................1

42 U.S.C. § 1983 ........................................................................................1

42 U.S.C. §§§§§§§ 1981, 1982, 1983, 1985, 1986, 1987, and 1988. ......................1

O.C.G.A. § 9-14-1(c). ...............................................................................8,15

O.C.G.A. § 9-14-45. ..................................................................................8,15

O.C.G.A. § 9-14-46. .....................................................................................19

O.C.G.A. § 9-14-47. ............................................................................8,16,18,19

O.C.G.A. § 16-10-24(a). ..................................................................10

O.C.G.A. § 17-4-26 ........................................................................16

O.C.G.A. § 17-6-1 .......................................................................16,45

O.C.G.A. § 40-5-29. .......................................................................10

# STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

Please note Appellant's abbreviations to References to the Record explained on the first page of the Table of Citations.

This Plaintiff-Appellant initiated this action on September 23rd, 2013, pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the United States Constitution. (R.1-1). This appeal is from orders of the district court on April 9th, 2014, and on February 27th, 2015, dismissing all this Plaintiff-Appellant's claims and his complaint against all the Defendant-Appellees herein. (R.21; R.52). The U.S. District Court had subject matter jurisdiction pursuant to 28 U.S.C. §1331. The district court also had jurisdiction under 42 U.S.C. §§§§§§§ 1981, 1982, 1983, 1985, 1986, 1987, and 1988. This Honorable Court has jurisdiction over this direct appeal from the final judgment of the District Court pursuant to 28 U.S.C. § 1291.

A notice of appeal from the District Court's final order on February 27th, 2015, dismissing all of Appellant's remaining claims, and Application to Appeal in forma pauperis were timely filed on March 30th, 2015 (Monday following due date on weekend). (R.54; R.55). The Application to Appeal in forma pauperis was denied by the District Court on June 5th, 2015. (R.61). Next, Appellant timely filed motion to proceed in forma pauperis with this Court on July 6th, 2015

1

(Monday following due date on weekend).  (P Mtn-1).  On October 8th, 2015, this Court denied said motion, and sent Appellant notice for a deadline to pay the Appeal fees in the District Court.  God gave Appellant a construction job, and he was able to timely pay the appellate fee on October 21st, 2015.

## <u>STATEMENT OF THE ISSUES</u>

This appeal presents distinct issues of Constitutional Law, which ultimately includes a Plaintiff's Right to a Jury Trial before his own peers to determine the merits of whether his Constitutional Liberties were denied. (Jury trials are the "firmest bulwarks of Liberty"- Thomas Jefferson). It is the duty of government to be clear and objectively concise when it imposes rules, laws, orders, and sentencing. It is also the duty of the government and its employees to honor the Liberties guaranteed by the United States Constitution to the citizens of this great nation. A trial by jury ultimately safeguards these Liberties. (R.31-44>46; R.35-78>80).

Unconstitutional ambiguity and vagueness which foster the arbitrary and discretionary power of government officials is dangerous to a free country and has no place in our society. Local and State governments should not be allowed to establish administrative processes which circumvent the United States Constitution. "The Constitution makes the laws of the United States "the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding," U.S. Const. art. VI, cl. 2, and when federal and state laws conflict, the latter must give way." <u>Medtronic, Inc. v. Lohr</u>, 56 F.3d 1335, 1341 (11th Cir. 1995).

3

Yet the State Defendants, Municipal Defendants, and certain agents therefore have granted unConstitutional authority to government employees identified herein to circumvent fundamental Liberties for individuals guaranteed by the Constitution of the United States. In Georgia, police officers are trained and licensed to arrest individuals for not carrying an identification card on their persons at all times. They are also trained and licensed to arrest individuals for declining to answer investigatory questions. These powers and duties imposed on these local government officers to conduct warrantless arrests violate the 4th and 5th Amendments to the Constitution. Plaintiff has been arrested/re-arrested seven times (hereafter- "driver's license arrests") for these types of incidents and has suffered continuing injuries based upon these incidents. Additionally, the government Defendants and their agents have abused their authority through various processes to conspire to unConstitutionally suppress Plaintiff's efforts to "claim" his inalienable Rights guaranteed by his State and Federal Constitutions.

All of the following have deprived this Plaintiff of his Constitutional Rights to a Jury Trial and to have his Liberties respected and preserved:

I.     Were Plaintiff's claims frivolous so as to warrant administrative dismissal by a Federal Court?

4

**II.**    Are United States citizens "obligated to cooperate with [Georgia State licensed police] officers" to provide identification cards on demand, and can they be charged with a crime for failure to do so?

**III.**    Can United States citizens be arrested and charged with a crime for peaceably asserting their 5th Amendment Right to Remain Silent?

**IV.**    Do Federal Courts have jurisdiction to entertain suits seeking injunctions for prospective relief against States and their agents for violations of Constitutional Rights?

**V.**    Upon demand for a Jury Trial, can a Federal District Court Judge usurp Constitutional authority as the sole fact finder to determine that police knocking a suspect unconscious twice, blacking his eyes, and leaving facial scars would not be excessive uses of force, or unreasonable seizures?

**VI.**    Does a District Court Judge have complete discretionary authority to dismiss complaints prior to a proper justiciable examination of all evidence being proffered or being allowed to be proffered at the appropriate stages of litigation?

**VII.**    Should pro se pleadings be dismissed when the prose of such is criticized by educated attorneys as being inartfully and untraditionally scripted?

**VIII.**    Are U.S. citizens in the custody of State probation not entitled to apply for consideration of the "Great Writ" unless imprisoned?

5

IX.     Does a Federal Court have the authority to order for bail to be set or to issue injunction for petty misdemeanor charges when there is likely no effective State judicial process to afford an accused timely appellate relief?

X.      Should a Federal Court, according to the exhaustion requirement, yield to a State's sovereignty as "a matter of comity rather than a matter of [Federal] jurisdiction", without considering the exception to take judicial notice of a voided or unconstitutional sentencing order?

XI.     Is the obstruction of Due Process access to the Courts a viable claim in Federal Courts?

XII.    Can a State, when bringing new accusations of crimes, through its own administrative systems, circumvent the substantive component of the Due Process Clause to avoid long standing Federal precedents of fundamental Rights to Liberty interests and a fair trial that afford an accused the protections of the United States Constitution?

XIII.   Can a State, through a plea bargain, arbitrarily deprive a U.S. citizen of Federal Constitutional Rights without explicitly informing the accused of such?

XIV.    Can a State take custody of a parent's child on the basis of mere accusations of misdemeanors even after the parent has later been adjudicated as being not guilty of said accusations?

6

# STATEMENT OF THE CASE

## Statement of Material Facts and Proceedings Below

On September 23rd, 2013, pursuant to 42 U.S.C. § 1983, Plaintiff filed a Federal law suit in the District Court of Northern Georgia for damages resulting from Constitutional violations and to enjoin the local government Defendants from habitually and continually violating the Constitution of the United States of America.    His  Complaint  was  titled  "VERIFIED  COMPLAINT  FOR CONSTITUTIONAL EQUITABLE RELIEF OR/AND DAMAGES AND TO ENJOIN STATE AND LOCAL GOVERNMENTS FROM QUASHING FEDERAL INDIVIDUAL RIGHTS UNDER THE COLOR OF THEIR LAWS." (R.1). On the same day, Plaintiff filed an accompanying Petition for Writ of Habeas Corpus in the District Court. (R.1-111; H.1).

Fearing  the  Defendants'  power,  careless  disregard  for  the  Federal Constitution, and intent to obstruct or deny Plaintiff's Due Process Access to the Courts, on January 21st, 2014, Plaintiff filed an emergency motion for injunction or temporary restraining order.   (R.1-111; R.3).   The District Court denied said motion on the same day.  The Defendant-Appellees filed numerous motions to dismiss over a span of one and a half years and never answered the complaint.

7

On February 9th, 2014, Plaintiff did serve his State Petition for Writ of Habeas Corpus on Respondent Darren Gunnels, Probation Officer for the Georgia Department of Corrections, and on Attorney General Sam Olens, pursuant to O.C.G.A. §§ 9-14-1(c) and 9-14-45. The Petition, with Certificate of Service, was entered by the Clerk of Superior Court of Spalding County on February 11th, 2014. (Inj Mtn- 27).

Additionally, in the State's Court, Plaintiff filed his Motion to Dismiss Existing Probation Warrant(s) (R.35-1-13>18 or pages 13 through 18 of document one of R.35) and a Motion for Bond on February 9th, 2014. On November 22nd, 2013, the State Defendant had already obtained warrant for Plaintiff's re-arrest for failing to display an identification card and exercising his Miranda Rights. Neither motion was ever entertained by the State's trial Court. Plaintiff was re-arrested on the night of March 3rd, 2014, on the warrant obtained by Respondent Gunnels, after the twenty days the State Defendant was required to answer Plaintiff's Petition for Writ of Habeas Corpus. O.C.G.A. § 9-14-47. As a matter of local governmental policy, Plaintiff was denied a Due Process Bail hearing for these petty misdemeanor accusations because he was classified as a probationer.

On September 5th, 2012, Plaintiff was arrested for failure to yield a personal identification card and answer investigatory questions by Georgia police officers. Quoting the City of Newnan's arresting officer "Officers attempted to get

8

Johnson's identity... Mr. Johnson refused to give his name and... After several attempts to gain information on the subject, officers informed him that he was going to be placed under arrest." (R.1-15>23; R.31-11; R.35-15).

On October 25th, 2012, Plaintiff was found not guilty for the Newnan charges. Without a chance for a jury trial on the municipal charges, Plaintiff's nolo contendere plea was accepted. (Inj Mtn- 218). "[A] nolo contendere plea may not be used to establish that a defendant violated the terms of her probation." Bolden v. State, 256 Ga. App. 327 (2002). (Inj Mtn- 219). However, one month after Plaintiff was adjudicated on these charges, the Georgia Probation Department re-arrested him and held him in jail on the same charges for a month without any opportunity for a bail hearing. Plaintiff's probation officer released him from jail when his family members threatened to call the Governor's office. (R.1-82>83; R.31-66,68; R.35-94,97).

Plaintiff was arrested and assaulted on March 20th, 2013, by two City of Hiram state-licensed "peace" officers. Please see the pictures of Plaintiff's injuries on the Jail Management Booking Form. (R.1-118). After "attempting to pat him down attempting to locate his driver's license" (not a pat down for weapons as authorized by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1869, 20 L.Ed.2d 889- Terry does not authorize a "pat down" or "stop and frisk" for a driver's license), Plaintiff was charged with "resisting in violation of code section 24-7", apparently a City of

Hiram ordinance, which charge was later changed to a violation of O.C.G.A. § 16-10-24(a)- Obstruction of officers. (Please see the citation, R.35-1-51).

Additionally, Plaintiff was charged with the State misdemeanor, "License to be carried and displayed on demand", for failure to provide his driver's license ("his papers"), or violation of  O.C.G.A. § 40-5-29 (R.35-1-52), which specifically states that an individual is required to have "his driver's license in his immediate possession at all times" only "when operating a vehicle." Plaintiff was not driving at the time, nor did he intend to drive.

During the arrest, Plaintiff was knocked unconscious and suffered a blacked eye, broken nose, and remaining facial scar, among other injuries. Plaintiff was denied medical treatment while incarcerated, and no investigation was done as to his injuries.  (R.1-118). Georgia's Probation Department and Hiram worked together to cover up evidence of the injuries and to keep Plaintiff incarcerated so he could not take action concerning such.  The book-in picture was the only evidence Plaintiff was able to obtain concerning his injuries while he was incarcerated. Plaintiff was not allowed to see a doctor. (A copy of this book-in picture was provided by a bondsman, and was not tendered, or released, as part of Plaintiff's open records request from Hiram.) (R.1-24>30).

Plaintiff was held in jail by Probation and was charged with a violation of probation for specifically and allegedly committing offenses generically labelled as

10

"obstruction" and "failure to show identification", even though he was never convicted of such. (Inj Mtn- 221>222, 396>408,392). After being incarcerated away from his children and business for 48 days, Plaintiff agreed to sign a consent order presented by his probation officer and the Assistant District Attorney of Spalding County revoking his probation for time already served in the Spalding County Jail. (R.35-1-2>4).

Said sentence was executed and entered on May 9th, 2013. According to the sentencing order titled "CONSENT ORDER ~~MODIFYING~~/REVOKING PROBATION", Plaintiff's probation was revoked, and Plaintiff agreed "to be released on time served since 3-24-13" and "to get a substance abuse evaluation and follow any recommended treatment within 30 days of release."

After Plaintiff was released from jail, Officer Gunnels scheduled an appointment for Plaintiff to meet with him on or about June 13th, 2013. Plaintiff went for the appointment as scheduled at the Griffin Probation office. However, Officer Gunnels could not make the appointment. So, he instructed his office receptionist to have Plaintiff call him. Plaintiff did call Officer Gunnels as instructed. Officer Gunnels instructed Plaintiff to fax him a copy of his substance abuse evaluation and told him that he would call Plaintiff at a later date for further instructions.

11

Plaintiff faxed a copy of the evaluation to Officer Gunnels on June 14th, 2013.    Please see (R.35-1-5>12), faxed copy of the evaluation with fax confirmation sheet.  The substance abuse evaluation was completed for Plaintiff on May 28th, 2013, and no additional treatment was recommended.  Hence, Plaintiff had complied with the revocation order.  Officer Gunnels never called Plaintiff again.  About a month after faxing the evaluation to Officer Gunnels, Plaintiff tried calling him to inquire if he had received a copy of the evaluation, but Plaintiff was never able to reach Officer Gunnels personally and his voice mail was always full.  Finally, one day, Plaintiff called and Officer Gunnels' number had been disconnected.   Plaintiff tried to call the main office and that number was disconnected also.

The revocation order clearly prescribes that Plaintiff's probation was revoked and that Plaintiff was released for time already served to obtain substance abuse evaluation and start treatment within thirty days *OR* continue under supervision.  Plaintiff was able to obtain the evaluation within 30 days of release, said evaluation recommending no further treatment.  Hence, Plaintiff had complied with the Court's order that revoked his probation in lieu of continuing under supervision.  (R.35-65>86).

Yet, the State's probation officer continued to maintain custody of Plaintiff because Georgia issued warrant to arrest Plaintiff for being arrested on September

12

7th, 2013. Plaintiff was arrested and assaulted for failure to provide a driver's license while walking. (R.1-119-122; Inj Mtn- 214>217). Said warrant was issued on November 22nd, 2013, for allegedly violating condition #1 of probation, "Do not violate the criminal laws of any governmental unit." Specifically, the warrant alleged, "The Defendant committed the offenses of obstruction and disorderly conduct in Kennesaw, GA on or about 9-7-13." The State's Petition for Revocation also blandly stated that Defendant committed the offenses of obstruction and disorderly conduct. No statute number or elements of any crime were accused. (Inj Mtn- 224,411). Please see the Constitutional requirements for accusations in Plaintiff's motions in arrest of judgment that were granted in the Paulding County Court and never entertained in the Spalding County Court. (Inj Mtn- 396>408,392; R.35-1-19>25).

This re-arrest by Georgia was a direct violation of the Court's sentencing order issued on May 9th, 2013 (R.35-1-2), and an illegal arrest of Petitioner since he was released from probation. Further worth noting is the fact that Petitioner has never been found guilty of committing any offenses or violating any criminal laws in Kennesaw, GA. The charges for the September arrest in Kennesaw were disposed on August 1st, 2014. (Inj Mtn- 225>226).

On the evening of September 6th, 2013, while walking, in the grass, off the side of the road, a Kennesaw police car pulled up behind Plaintiff. A police officer

13

exited the vehicle and asked him what he was doing.  Plaintiff said he was walking.
The police officer asked for his driver's license.  Plaintiff declined to give him his
driver's license.  Two police officers then placed Plaintiff under arrest, handcuffing
him, and, in the process, rendered Plaintiff unconscious, blacked and bloodied his
eye and roughed up his face and head.  (R.1-30>31, 119>122; R.35-18).

The officer charged Plaintiff with pedestrian under the influence, disorderly
conduct (use of fighting words), and obstruction for declining to give up his
driver's license or state his name and date of birth.  The police video, that was
exculpatory evidence suppressed by the State at Plaintiff's April 1st, 2014,
revocation hearing, clearly showed that Plaintiff never cursed until after he was
provoked by the arresting officers and had regained consciousness from the assault
by the arresting officers.  (R.35-46>48).

The officer's narrative about what happened at the hospital is totally
misleading.  What the officer failed to mention in his narrative was why he had to
take Plaintiff to the hospital in the first place.  He offered no explanation as to how
he accosted and assaulted Plaintiff so as to black and bloody his eye or rough up
his face and head.  In spite of being provoked by the police officer, with blood
dripping down Plaintiff's face, at no time, did Plaintiff cuss out or threaten any of
the hospital workers.  Neither did he stumble over a fog line.  Neither did he drink
any "intoxicating liquors" or take any drugs.

On September 23rd, 2013, Plaintiff filed his complaint and Petition for Writ of Habeas Corpus in the Federal District Court. On November 22nd, 2013, Georgia issued warrant to re-arrest Plaintiff for being arrested by Kennesaw. On February 9th, 2014, Petitioner did serve his Petition for Writ of Habeas Corpus on Respondent Darren Gunnels, Probation Officer of the Georgia Department of Corrections, and on Attorney General Sam Olens, pursuant to O.C.G.A. §§ 9-14-1(c) and 9-14-45. (Inj Mtn- 201). The Petition, with Certificate of Service, was entered by the Clerk of Superior Court of Spalding County on February 11th, 2014. (Inj Mtn- 169>178).

The Petition for Habeas Corpus relief clearly showed that Plaintiff's liberty was being restrained illegally by Respondent Gunnels as Respondent maintained probationary custody, not merely physical custody, over Petitioner.  (Inj Mtn- 85>163).  Plaintiff additionally showed that his liberty was taken due to specific State and U.S. Constitutional violations and misinterpretations of sentences imposed.

Additionally, Plaintiff filed his Motion to Dismiss Existing Probation Warrant(s) (R.35-13>18) and a Motion for Bond on February 9th, 2014. Respondent had already issued warrant for Petitioner's arrest on November 22nd, 2013.  Neither motion was ever entertained by the trial Court.  Plaintiff was arrested on the night of March 3rd, 2014, on the warrant issued by Georgia, after

15

the twenty days that Respondent was required to answer Plaintiff's Petition for Writ of Habeas Corpus. O.C.G.A. § 9-14-47.

As a matter of local judicial policy, since Plaintiff was classified as a probationer, the Spalding County Courts determined that Plaintiff was not eligible for bond hearing as guaranteed by O.C.G.A. §§ 17-4-26 and 17-6-1. Petitioner was simply told, as were other probationers thereat, that probationers in Spalding County are not allowed to have bond considered. However, other counties in Georgia extend bond to probationers that qualify under O.C.G.A. § 17-6-1.

While being jailed at the State's Probation Detention Center, Plaintiff was not allowed to make copies of his Court Pleadings. (Inj Mtn- 301). So, Petitioner sent his pleadings addressed to the chambers of Judge Edwards, Chief Superior Court Judge of the Griffin Judicial District.

On March 28th, 2014, Petitioner mailed a letter to Judge Edwards letting him know that Petitioner was incarcerated and asking him to review the Petition for Writ of Habeas Corpus, Emergency Motion for Injunction, Temporary Restraining Order, or Bond, and Motion to Dismiss Probation Warrant, all filed on February 11th, 2014. The Clerk filed the letter on April 2nd, 2014, in the Habeas 14V-197 case. (Inj Mtn- 227>229).

The letter explained the custodial arrangements for the Habeas Petition that had been filed before he was incarcerated and that had detailed the illegal

16

probation restraint on his liberty. The letter briefly explained that Petitioner had been illegally arrested for failure to display a driver's license in direct violation of the 4th and 5th Amendments. The letter also explained that Petitioner was being held illegally with no opportunity for bail to be considered.

On the 4th of April, from the Spalding County Detention Center, Petitioner filed his Emergency Motion to Arrest the Judgment of his April 1st Probation Revocation Hearing because his accusations failed to state a crime that Petitioner was charged with having committed. (Inj Mtn- 227>236). On April 7th, Petitioner's public defender returned his attorney-client file, which included the evidence he forgot to bring to revocation hearing, work-product, and supporting case law for Petitioner's argument. Without notice at 4 A.M., on April 8th, Petitioner was shipped to the State's Probation Detention Center (PDC).

Upon arrival at the PDC, Petitioner's attorney client file and other work-product were confiscated by State's correctional officers. Throughout Petitioner's incarceration at the PDC, the State either obstructed or denied Petitioner his Right to mail and receive legal pleadings. The State's correctional officers also reviewed Petitioner's attorney-client file, his work-product, and his legal mail. Petitioner was punished for possessing his case law, and eventually all of his State and Federal Law was confiscated and locked away in a box labelled "Contraband". (R.35-1-50; Inj Mtn- 168, 200).

17

Plaintiff filed many motions for relief from the Georgia Detention Centers' attempts to keep Plaintiff from filing Court pleadings, and all were ignored by the presiding State and Federal Habeas Judges. (Inj Mtn- 237>284, 300>301). In an attempt to provoke Plaintiff to violence and to obstruct Plaintiff from filing his Court pleadings in the PDC, the State's own correctional officers cursed and repeatedly showered Plaintiff's face with fighting words. (R.35-1-53>67). This was a blatant exercise of the arbitrary and discretionary prosecution for the disorderly conduct statute's reference to "fighting words" by the State of Georgia. (R.35-46>57).

O.C.G.A. § 9-14-47 states that "within 20 days after the filing and docketing of a petition… the respondent shall answer or move to dismiss the petition. The court shall set the case for a hearing on the issues within a reasonable time after filing of defensive pleadings." The Petition for Writ of Habeas Corpus was filed by the Clerk of the Superior Court of Spalding County on February 11th, 2014. Hence, the Respondent was required to file an answer or motion to dismiss no later than the March 3rd, 2014. Instead, Petitioner was arrested on Respondent's probation warrant on the night of March 3rd.

The State never filed an answer to Plaintiff's State Habeas Petition as required by O.C.G.A. § 9-14-47, which required the State to file its answer within 20 days. Instead, the State's Attorney General came to finally certify that he

18

mailed his Motion to Dismiss Petition as Moot on July 1st, 2014. (Inj Mtn- 81). The motion to dismiss was filed by the Clerk on July 8th, 2014.

The State, inexcusably, failed to comply with O.C.G.A. § 9-14-47 bringing extreme prejudice upon Plaintiff. Relying on the timeliness asserted in Georgia's certificate of service, Georgia waited 139 days to file his motion to dismiss, which is 119 days late and a multiple of approximately seven times the 20 days commanded by Georgia Law. Said motion consisted of a whopping total of 8 sentences.

Excluding the opening and closing sentences, the motion only offered six sentences of argument, if they could even be called argument. (That is less than one sentence of argument per two weeks.) Georgia's statements were nothing more than a generic denial of the Petition as whole with no attempts to offer any cogent and specific rebuttal to any of Petitioner's arguments. No authorities were cited to support to the denial. The State's Attorney General was allowed to submit an ex parte proposed order later containing new case law that Plaintiff was never allowed to rebut. (Inj Mtn- 75>80).

The State's Court originally scheduled a hearing for the Habeas Corpus relief to be held on May 13th, 2014. O.C.G.A. § 9-14-46 states that "Custody and control of the petitioner shall be retained by the Department of Corrections or other authority having custody of the petitioner. It shall be the duty of the department or

19

authority to produce the petitioner at such times and places as the court may direct." However, while Plaintiff was incarcerated by the State, Georgia did not comply with its duty to produce Plaintiff for the Habeas Corpus hearing scheduled the May 13th hearing.

After Plaintiff filing a request to be transported to the Habeas hearing, the State Court, instead of ensuring that the Department of Corrections did so, rescheduled the Habeas hearing for over a month later, on June 26th, after Petitioner was due to be released from jail. (Inj Mtn- 267, including 168, 200, 300, 301, and 203).

Still, even at this later scheduled Habeas hearing, Respondent was not prepared to answer the Petition. Instead an attorney from the Attorney General's office informed the Habeas Court at the hearing that the Petition should be dismissed because the State was the proper respondent, not Officer Gunnels, Petitioner's probation officer with the Georgia Department of Corrections. Yet, later, came that same attorney, to purport to be counsel for Respondent Gunnels, to file a motion to dismiss under the same caption filed by Petitioner. **(Exhibit "2").**

Uniform Superior Court Rule 4.2 states that "No attorney shall appear in that capacity before a superior court until the attorney has entered an appearance by filing a signed entry of appearance from or by filing a signed pleading in a pending action." Andrew Sims, Esq. appeared for the Habeas hearing on the 26th to argue

before the Court.  However, it was unclear as to who he was representing while speaking at the hearing in his official capacity as an attorney.  He asked the Habeas Court to dismiss Officer Gunnels as a respondent to name the State as the respondent.  It was unclear as to whether he represented Officer Gunnels, or just the State, or both.  This is exactly why Georgia's USCR 4.2 requires that an attorney file a notice of appearance so that the Court and other parties will know how and with whom to communicate concerning the case.  Yet, Mr. Sims was allowed to argue concerning the Habeas issues with Petitioner being allowed no rebuttal at all.

Angelique McClendon, Esq. of the State's Attorney General's Office communicated, ex parte (by fax) with the presiding State Habeas Judge prior to filing an entry of appearance.  Said motion was granted without ever being served upon Plaintiff.  The State's attorney had faxed directly to the Judge's chambers a motion to quash Plaintiff's subpoena served on the State's PDC.  (Inj Mtn-276>279).  Plaintiff had subpoenaed video footage of the State's Correctional Officers cursing him out and refusing to allow him access to his Court pleadings.  The State's own Correctional Officers were allowed to use words like "f—k".  Yet, the State used its own administrative process to convict Plaintiff of "disorderly conduct" for using the same words.  The State refused to issue warrants against its own correctional officers for using the same language.

21

At the June 26th State Habeas hearing, immediately, without allowing rebuttal from Plaintiff, the Court ordered that the hearing be rescheduled again and that Petitioner properly serve the State with the Petition. However, Plaintiff had already properly served the State, said issue being acknowledged later. The State Habeas Judge was biased in favor of the State. The State Habeas Judge is quoted in Plaintiff's Revocation hearing as **"We're still not** – the State's still not looking too good... That's all right. That's okay. No. We're getting there." (T- 4/1/14, 30:7-32:16).

The State failed to appear for the third Habeas hearing scheduled for August 12th, 2014. The Habeas Court and Plaintiff waited for approximately three hours, but the State's attorney never appeared. The Habeas Court informed Plaintiff that it would review Plaintiff's pleading requests for Habeas relief, since the State was not in attendance, and informed Petitioner that an order would be executed later in the day. This was very close to lunch time. Petitioner expected that the Judge would grant his Habeas relief.

Instead, however, the presiding Judge contacted the Attorney General's Office in some type of ex parte communication to request a proposed order from the State. Later in the day, at 1:29 P.M., via e-mail, Georgia submitted its proposed order for the Honorable Judge Edwards to sign dismissing Plaintiff's Habeas Petition as "moot" (Inj Mtn- 75: please see page 4 of Exhibit "1"). There

22

is no direct Right to Appeal for Habeas Petitions in the State of Georgia. Plaintiff filed his Application for Certificate of Probable Cause, on September 11th, 2014, and Motion for Reconsideration with the Supreme Court of Georgia. Despite Georgia's Supreme Court Rule 36, the Court denied Plaintiff Due Process for review of his Habeas Petition, which clearly had "arguable merit". The application for appeal was denied with no findings of fact or conclusions of Law justifying said denial. (Inj Mtn- 308>391).

Through its own administrative processes (juvenile court and probation), Georgia initiated collateral proceedings to rob Plaintiff of the custody of his daughter on mere accusations of the last driver's license arrest, despite Plaintiff not being adjudicated as guilty of such. (R.36; R.39; Inj Mtn- 212>213, 418>664).

## **Standard of Review**

The Standard of Review for the Issues in this appeal is De Novo Review. This court reviews de novo the dismissal of a complaint pursuant to Rule 12(b)(6)- Issues **I**, **VI**, and **VII**. Harris v. Ivax Corp., 182 F.3d 799, 802 (11th Cir.1999). Questions of Constitutionality impinging on fundamental Rights are reviewed de novo under strict scrutiny- Issues **II** (4th Amend.), **III** (5th Amend.), **IV** (11th Amend.), **VIII** (U.S. Const., Art I, Sec 9), **IX** (11th Amend.), **X** (5th and 14th Amend.), **XI** (5th and 14th Amend.), **XII** (U.S. Const., Art III; 5th, 6th, 8th, and 14th Amend.), **XIII** (5th and 14th Amend.), and **XIV** (5th, 6th, and 14th Amend.). Issues

23

concerning mixed questions of law and fact are reviewed de novo where factual issues do not predominate- Issue **V** (4th Amend.),

## SUMMARY OF THE ARGUMENT

William has been arrested/re-arrested seven times for failure to present an identification card on demand of Georgia-licensed, municipal police officers. All arrests were warrantless arrests. William was falsely charged with crimes for remaining quiet when questioned by the Georgia police officers during these arrests. Additionally, during two of the arrests, the Georgia police officers rendered William unconscious with black eyes and facial scars. Ambulances responded to the arrest scenes on both occasions. Upon the eaves of jury trials demanded, William was finally adjudicated not guilty of any crimes accused from these arrests.

No "stop and identify" laws exist in Georgia requiring individuals to present identification cards on the demand of Georgia police officers. Any attempts by police officers to force U.S. citizens to relinquish their Miranda Rights are unConstitutional. Yet, upon each warrantless arrest, these Georgia officers informed William that their authority to arrest him for failure to "display" an identification card or answer "their questions" was vested in the State of Georgia and their municipal employers.

24

"The possibility of recurring injury ceases to be speculative when actual repeated incidents are documented." Nicacio v. INS, 768 F.2d 1133, 1136 (9th Cir.1985), amended, 797 F.2d 700, 702 (9th Cir.1985) (cited in Deshawn, 156 F.3d at 344). (Inj Mtn-13). Clearly, these seven arrests/re-arrests within five different jurisdictions of Georgia, involving more than 15 police officers, establish a pattern to support a "claim" that the Executive Branch of Georgia trains its police officers to thumb their nose at the 4th and 5th Amendments to the United States Constitution. "[V]iolations of constitutional rights are presumed irreparable", and Federal Courts are endowed with the power to eradicate such actions or governmental policy. Conn. Dep't of Environmental Protection v. O.S.H.A., 356 F.3d 226, 231 (2d Cir.2004).

All of these warrantless arrests involved unreasonable searches and seizures based upon the same exact precepts, failure to display an identification card and failure to answer questions of police officers. Agents for the government Appellees conspired to "cover up" these Constitutional violations by charging Appellant with generic and arbitrary accusations such as "obstruction," "disorderly conduct," "public drunkenness" (in a bar), and "pedestrian under the influence" (drinking and walking). Additionally, Plaintiff was denied bail, and government contractors refused to provide ambulance response records so that Plaintiff could not have access to appropriate medical records and treatment.

Other government employees brought numerous other damages and Constitutional violations of Plaintiff's fundamental Liberty interests based upon these same false accusations. Additionally, agents contracted or employed by the Defendant-Appellees repeatedly obstructed and denied Plaintiff Due Process to grieve said claims.

A couple of weeks after the last warrantless arrest for failure to display an identification card, Plaintiff filed his § 1983 lawsuit herein to enjoin the government Defendants from continuing with its unConstitutional practices and for relief from the past damages and prospective continuing damages being brought upon Plaintiff by the Defendants consequential to the same false arrests. After having to describe the facts involved with all the arrests for failure to display an identification card and the numerous resulting damages and Constitutional violations, Plaintiff's § 1983 complaint was quite lengthy.

Plaintiff laid claim to the following damages and Constitutional violations: 4 warrantless arrests involving unreasonable searches and seizures for failure to display an identification card and asserting his Miranda Rights, 2 of said arrests utilizing excessive force; conspiracies to conceal Constitutional violations relating to the arrests; suppression of Plaintiff's freedom of speech in two of the arrests; suppression of his Right to assemble in one of the arrests; unconstitutional vagueness of the accusations which the arresting officers tried to use to legitimize

26

said arrests; an unreasonable warrantless search of Appellant's car; double jeopardy; suppressions of exculpatory evidence; suppressions of Appellant's Rights to confront accusers; obstruction of Due Process Rights to have bail set; 3 re-arrests for the false accusations; cruel and unusual punishment for denial of medical treatment while in jail; interference with the fundamental Liberty interests of familial relationships; denials and obstructions of Due Process in many fashions; false imprisonment; denials of freedom of movement; emotional distress; punitive damages; and attorney fees. (R.1-100>113).

None of the Defendants answered the complaint. None of the Defendants ever denied any of Plaintiff's accusations. Instead, the State Defendant filed a motion to dismiss claiming to have sovereign immunity from Plaintiff's claims based on the 11th Amendment. The municipal Defendants filed motion for a more definite statement and numerous motions to dismiss crying to the District Court that Plaintiff's claims were "impossible" to comprehend.

The District Court, sua sponte, acted as the sole fact finder to determine that all of Plaintiff's claims were frivolous without fully examining the evidence presented. The District Court then determined that, as a matter of law, all of Plaintiff's Constitutional grievances should be dismissed. Furthermore, the District Court ruled that it had no jurisdiction to grant prospective injunctive relief against the State of Georgia.

27

# ARGUMENT AND CITATION OF AUTHORITIES

## I.    Were Plaintiff's claims frivolous so as to warrant administrative dismissal by a Federal Court?

"Dismissal ... should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.' Conley v. Gibson... In resolving a motion to dismiss ... '[w]e read a complaint liberally and `accept as true the well pleaded allegations of the complaint and the inferences that may be reasonably drawn from those allegations.'" Fernandez v. Wolff, 919 F. Supp. 1120 (N.D. Ill. 1996).  (Inj Rply-6>6; P Mtn Rply-2>11).  Conley v. Gibson, 355 U.S. 41, S.Ct. 99, 2 L.Ed.2d 80 (1957).

In Pace v. Evans, 709 F.2d 1428 (11th Cir. 1983), Pace, alleged "numerous violations of his constitutional rights... the district court dismissed the complaint because the allegations were frivolous or stated in conclusory fashion".  Therein, citing Conley, supra and Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), the Appeals Court concluded that pro se pleadings are to be held to "less stringent standards than formal pleadings drafted by lawyers" and that Pace's "complaint alleged facts which, if proven, might arguably entitle him to relief."  Therefore, the District Court's order for dismissal was vacated and remanded for further proceedings.

Herein, the District Court simply characterized Plaintiff's complaint as "long", "rambling", and "mainly composed of conclusory statements".  The Court

determined that, after accepting all of plaintiff's "allegations as true and [considering] the allegations in the complaint in the light most favorable to the plaintiff, it was "impossible" to ascertain any "viable claims" upon which relief could be obtained.

Plaintiff's complaint may have been long because Plaintiff identified "numerous violations of his constitutional rights" by numerous parties working under the Color of State and Municipal Law, often in concert, to assert their usurped powers based on the illegal driver's license arrests. The State licensed municipal officers worked hand in hand with State agents to try to prosecute and persecute Plaintiff for the driver's license arrests and to cover up their arrest injuries to Plaintiff. Arguably, Plaintiff may have also used some conclusory statements. However, this Plaintiff's "complaint alleged facts which, if proven" will "entitle him to relief" and should not be dismissed. Pace, supra.

Plaintiff rewrote his complaint twice (R.35), attempting to specifically identify his grievances to the Court and even requested that the Court reveal its subjective standards to specifically detail what Plaintiff needed to do to file a complaint it would accept. (R.45-25). However, the District Court never gave Plaintiff specific instructions on what to do in order for the Court to accept his complaint. Most complaints do contain "conclusory statements". "Rambling" is a

very vague criticism.  Furthermore, the District Court never directed a page limit to be placed on Plaintiff's complaint.  (Inj Mtn-14).

## II.    Are United States citizens "obligated to cooperate with [Georgia State licensed police] officers" to provide identification cards on demand, and can they be charged with a crime for failure to do so?

"The mere refusal to identify one's self to an officer is not a crime." Ewumi v. State, 315 Ga. App. 656, 727 S.E.2d 257 (2012).  Hiibel v. Sixth Judicial District of Nevada, Humbolt Co., Etal., 542 US 177, 124 S.Ct. 2451, 159 LE2d. 292 (2004).  A Defendant's "refusal to furnish identification… may have created suspicion… but falls far short of probable cause." United States v. Brown, 731 F.2d 1491 (11th Cir.1984), modified on other grounds, 743 F.2d 1505 (1984). Kolender v. Lawson, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed. 903 (1983).  Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979).  The District Court's finding that Plaintiff was required to cooperate by providing a driver's license and could be charged with a crime for failing to provide a license on demand is completely wrong.  (Inj Mtn-4>5; Inj Rply-1>9; R.35-60>68; R.35-93>95; R.61-3; R.52-4).

The Fourth Amendment gives citizens the right to refuse to consent to warrantless searches and seizures.  "Just as a criminal suspect may validly invoke

his Fifth Amendment privilege in an effort to shield himself from criminal liability, Cole v. United States, 9 Cir., 1964, 329 F.2d 437, 442; United States v. Courtney, 2 Cir., 1956, 236 F.2d 921, 923, so one may withhold consent to a warrantless search, even though one's purpose be to conceal evidence of wrongdoing." US v Prescott, 581 F.2d 1343 (9th Cir. 1978). (Inj Mtn-4>6; Inj Rply-1>9; P Mtn Rply-9>11).

The State Defendant's probation division re-arrested Plaintiff three times for these accusations, which were not crimes. (R.1-23>24; R.1-29>30; R.35-17>19). Subsequently, the State, using its own administrative procedures, circumvented the Georgia and United States Constitutions to pre-emptively imprison Plaintiff for six months without allowing Plaintiff to have a due process bail hearing for the "charges" it ambiguously and discretionarily described as misdemeanors.

Plaintiff was punished for allegedly violating condition one of his probation: "Do not violate the criminal laws of any governmental unit." The accusations the State used to prosecute Plaintiff were simply described with general terms such as: "failure to display driver's license (identification) on demand, disorderly conduct (suppression of speech), public drunkenness (in a bar), and misdemeanor obstruction (failure to answer police questions/show identification). No elements of any crimes were described. Neither were any Georgia statutes or municipal ordinances referenced. After already having been unconstitutionally imprisoned

for six months by the State's probation division, on the eaves of jury trials demanded by Plaintiff for all the accusations, the "charges" were dismissed, and Plaintiff was not found guilty of "violating" any laws.

In the complaint, amended complaints, and subsequent pleadings filed in the District Court, Plaintiff offered testimony, through his assertions and affidavit verifying his personal knowledge of the facts asserted in the verified complaint, that he was arrested three times by State licensed municipal peace officers because he failed to provide an identification card (driver's license) upon the discretionary demand of State licensed police officers.  (R.1-6>8; R.1-32; R.1-41>76; R.1-83>89; H.9-4>9; R.31-11>13; R.31-23>29; R.31-53>59; R.35-17>23; R.35-34>38; R.35-40>44; R.47-3).   These police officers were the employees of the three municipal Appellees herein.  Plaintiff also filed exhibits in the District Court containing statements by the police officers, themselves, which stated that the police officers arrested Plaintiff for failure to provide a "driver's license". (Plaintiff had not been operating a vehicle at the time.)  (R.1-15>23; R.1-24>32). Quotes from the transcript of Plaintiff's April 1st, 2014, revocation hearing show that he was arrested for not providing a driver's license, not identifying himself, and not answering the interrogating officer's questions. (H.9-6>9).

### III.    Can United States citizens be arrested and charged with a crime for peaceably asserting their 5th Amendment Right to Remain Silent?

In the complaint, amended complaints, and subsequent pleadings filed in the District Court, Plaintiff offered testimony, through his assertions and affidavit verifying his personal knowledge of the facts asserted in the complaint, that he was arrested four times by State licensed municipal peace officers because he asserted his Constitutional Rights to remain silent when questioned by State licensed peace officers.  (R.1-6>8; R.1-32; R.1-41>89; H.9-4>9; R.31-11>13; R.31-23>29; R.31-53>59; R.35-17>23; R.35-34>40; R.35-93>95; R.47-3).  These peace officers were the employees of the three municipal Appellees herein.  Plaintiff also filed exhibits in the District Court containing statements by the police officers, themselves, which stated that the police officers arrested Plaintiff for failure to answer their questions.  (R.1-15>23; R.1-24>32).

It is axiomatic that one cannot be punished for exercising his Miranda Rights.  Miranda v. Arizona, 384 U.S. 436 (1966).  Even the Georgia Appellate Courts have determined this.  Police officers cannot forcibly present one with a choice between answering their questions or being arrested, because such arrest would be an arrest for peaceably asserting one's constitutional rights.  Harris v. State, 314 Ga. App. 816, 726 S.E.2d 455 (2012).

The State Defendant's probation division then re-arrested Plaintiff three times for these accusations, which were not crimes. (R.1-23>24; R.1-29>30). Subsequently, the State, using its own administrative procedures, circumvented the Georgia and United States Constitutions to pre-emptively imprison Plaintiff for six months without allowing Plaintiff to have a due process bail hearing or trial for the "charges" it ambiguously and discretionarily described as misdemeanors. After already having been unconstitutionally imprisoned for six months, on the eaves of jury trials demanded by Plaintiff for all the accusations, the "charges" were dismissed, and Plaintiff was not found guilty of "violating" any laws.

**IV.   Do Federal Courts have jurisdiction to entertain suits seeking injunctions for prospective relief against States and their agents for violations of Constitutional Rights?**

Plaintiff had repeatedly requested prospective injunctive relief in the District Court. (R.1-1>10; R.13-4>24; R.14; R.20-6>9; H.9; R.31-2>9). Plaintiff asserted numerous constitutional violations by State actors denying his due process access to the Courts to file his grievances herein and asked the Court to order the State to quit doing such. Plaintiff had filed suit against the State, and the State's own agents took extreme measures to prevent Plaintiff from waging suit against the State. On one occasion, a State Correction Officer was so bold as to impound

Plaintiff's legal authorities and Court papers to be stored under lock and key in a box labelled **"Contraband"**.    (R.35-1-50; Inj Mtn-204,12>13; H.9- Habeas Petition in the District Court: case #: 1:13-cv-3156-wsd; R.47, R.49).

On three other occasions while in jail, Georgia state licensed police officers would not allow Plaintiff to access to any legal references at all. (R.47). One time Plaintiff was punished for filing his legal pleadings. (H.9). On another occasion, a case that Plaintiff had docketed in the United States Supreme Court was dismissed for failure to answer because a Georgia Correctional facility would not allow Plaintiff to receive mail from the Courts. (H.9). Said claims in the U.S. Supreme Court had been lodged against Spalding County's attorney for nearly 11 years. Spalding County is the small county where Plaintiff's probation hearings were held.

Plaintiff presented to the District Court an exhibit of an executed Court order releasing him from probation.   Such was evidence of wrongful restraints of Plaintiff's Liberty by the Georgia Department of Corrections and its probation division.  Still, Plaintiff was later incarcerated for months, with no opportunity for proper bail hearing, by the State of Georgia for petty misdemeanor accusations, crimes he was later adjudicated not guilty of.  Additionally, Plaintiff is currently being forced to abide by intensive probation supervision and restraints due to these false accusations.

35

Plaintiff pleaded to the District Court that the State of Georgia was in charge of training, choosing educational institutions for, and licensing police officers. Specifically, the State educates, instructs, commands and empowers its State licensed officers to conduct searches, seizures, and arrests of U.S. citizens. Under the "Color of the Law", the State and the Municipal Appellees herein delegate these powers to their police officers.

Warrantless arrests without probable cause are violations of the Georgia and United States Constitutions. The State of Georgia has never legislated a Constitutional "stop and identify" law requiring individuals to continuously carry identification cards on their persons. Hence, the act of a state or municipality training and commanding their police officers to arrest U.S. Citizens for asserting their Constitutional Rights to remain silent or for failing to provide identification cards on demand of the police officers is a violation of the 4th and 5th Amendments.

Since Plaintiff testified to four different situations where multiple (groups of two or more) State licensed municipal officers from four different municipalities (Kennesaw, Hiram, Newnan, and Canton) either arrested or threatened to arrest him for not displaying his driver's license (identification card) on demand, he presented evidence that the State of Georgia trains police officers to conduct unconstitutional arrests unsupported by valid "stop and identify" laws. (R.1-

36

41>44). (Plaintiff testified that all of the arresting officers claimed to have vested authority to do so from the State of Georgia and the municipal defendants herein.)

Suing for a permanent injunction would force the State of Georgia to either train its police officers properly or legislate a Constitutional "stop and identify" law to support its officers' actions. Furthermore, the increased deprivation of Liberty and punishment (intensive probation requirements) imposed on Plaintiff by the Georgia Department of Corrections for said illegal arrests for these "charges" he was later adjudicated not guilty of needs to be reversed. A temporary or permanent injunction is prospective relief to prevent irreparable injury to Plaintiff and his family, while bringing no harm to anyone else. "[V]iolations of constitutional rights are presumed irreparable". Conn. Dep't of Environmental Protection v. O.S.H.A., 356 F.3d 226, 231 (2d Cir.2004).

Plaintiff has already spent nine months in jail for crimes he never committed. (Inj Mtn-5>10, 396>408, 218>226; R.31-43>59; R.47; R.49). Additionally, Plaintiff has been placed under intensified probation supervision at a day reporting center by the State Defendant's probation division for these illegal arrests, even though he was eventually not found guilty of the "charges". Plaintiff has been subject to curfew. He has been ordered to serve over 80 community service and restorative justice hours, to submit to 1 to 4 random alcohol tests every week, and attend five to fifteen hours of class instruction every week. Plaintiff is

37

also required to attend 2 Alcoholics Anonymous meetings every week. As a result,

Plaintiff's freedom to find meaningful employment has been severely restricted.

Plaintiff is a single father and business owner. These restraints on his liberty have

severely damaged his livelihood and his relationships with his children. Plaintiff's

daughter believes him to be a criminal.

> Injunctive relief from a State Department of Corrections can be granted and is not exclusively prohibited by the 11[th] Amendment. Hutto v. Finney, 98 S.Ct. 256 (2008). "If this extreme position could be deemed to be well taken, it is manifest that the fiat of a state Governor, and not the Constitution of the United States, would be the supreme law of the land; that the restrictions of the Federal Constitution upon the exercise of state power would be but impotent phrases, the futility of which the State may at any time disclose by the simple process of transferring powers of legislation to the Governor to be exercised by him, beyond control, upon his assertion of necessity. Under our system of government, such a conclusion is obviously untenable. There is no such avenue of escape from the paramount authority of the Federal Constitution. When there is a substantial showing that the exertion of state power has overridden private rights secured by that Constitution, the subject is necessarily one for judicial inquiry in an appropriate proceeding directed against the individuals charged with the transgression." Scheuer v Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). (P Mtn Rply-4>8; R.31-6; R.35-7; Inj Mtn-2>4).

With no opportunity for a proper bail/bond hearing, the District Court could

have ordered the State Court to conduct one for Plaintiff. (R.31-14>18; R.13-

7>13). In order to render State remedies truly effective, a Federal Court can order

a State Court to release a prisoner on bond. "The release on bail shall continue

until he has fully exhausted his State, and if necessary, his Federal remedies."

Boyer v. City of Orlando, 402 F.2d 966 (5th Cir. 1968).  Green v. Orlando, 313 F.Supp. 583 (1970).  (Inj Mtn-3,6,12>21; Inj Rply-10>11).

In Monroe v. Pape, 365 U.S. 167, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961), the Court identified 3 main purposes envisioned by the Congress that enacted the 42 U.S.C.A. § 1983 statute: (1) "to override certain kinds of state laws"; (2) to provide "a remedy where state law was inadequate"; and (3) to provide "a federal remedy where the state remedy, though adequate in theory, was not available in practice." The availability of a state remedy does not affect a plaintiff's right to seek redress in the first instance in federal court under § 1983.  Monroe, 365 U.S. at 180.

"[N]o sound reason exists for holding that federal courts should not have the power to issue injunctive relief against the commission of acts in violation of a plaintiff's civil rights by state judges acting in their official capacity." Erdmann v. Stevens, 458 F.2d 1205, 1208 (2d Cir. 1972), cert. denied, 409 U.S. 889 (1972). See also Law Students Civil Rights Research Council, Inc., v. Wadmond, 299 F. Supp. 117, 123 (S.D.N.Y. 1969) (three-judge court), aff'd, 401 U.S. 154 (1971).

"Individuals who were arrested for non-jailable misdemeanors and were committed to jail when they were unable to meet bail imposed by state magistrate brought suit under section 1983, claiming that magistrate's practice was unconstitutional... The Supreme Court... held that: (1) judicial immunity is not a bar to prospective injunctive relief against judicial officer acting in her judicial

39

capacity, and (2) judicial immunity is no bar to award of attorney fees under § 1988." Pulliam v. Allen, 466 U.S. 522, 104 S. Ct. 1970, 80 L. Ed. 2d 565 (1984).

"[W]here the police engage in any other policy or practice that systematically violates citizens' rights, there is a threat of continuing or future violations that damages for past injuries cannot redress… [and] equitable relief in the form of an injunction or declaratory judgment may be available." Mitchum v. Foster, 407 U.S. 225, 92 S. Ct. 2151, 32 L. Ed. 2d 705 (1972).

Where a police practice or policy creates a real and immediate threat of future injury to an identifiable plaintiff or class of plaintiffs, a request for an injunction or declaratory judgment should be granted. Pulliam v. Allen, supra.


**V.    Upon demand for a Jury Trial, can a Federal District Court Judge usurp Constitutional authority as the sole fact finder to determine that police knocking a suspect unconscious twice, blacking his eyes, and leaving facial scars would not be excessive uses of force, or unreasonable seizures?**

Plaintiff presented pictures of his injuries from two of the driver's license arrests. If it could be proven that the officers arrested Plaintiff because he did not provide a driver's license on demand, which is what Plaintiff testified to and what excerpts of two incident reports and another arresting officer's affidavit stated, being knocked unconscious resulting in blacked eyes and facial scars could very

well be deemed uses of excessive force, or unreasonable searches and seizures. U.S. Const. 4th Amend.  Graham v. Connor, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Tennessee v. Garner, 471 U.S. 1 (1985). (Inj Mtn-5>7, 9, 164, 191; P Mtn Rply-2>3; Affidavits of Irreparable Injury and Indigence filed in this 11th Cir. Appeals Ct.; R.1-15; R.1-32; R.1-24>32; R.1-41; R.1-85>86; R.1-93>94; R.31-11>13; R.31-33>34; R.35-19>21; R.35-44>49; R.35-90>92; R.35-95>99; R.1-3, 4, 6>8, 15>32, 41>113; R.31-3,4, 6>8, 11>14, 23>39, 42>46, 48>72; R.35-3>10, 15>19, 30>56, 77,78, 80>86, 86>101; R.47-4>14).

**VI.    Does a District Court Judge have complete discretionary authority to dismiss complaints prior to a proper justiciable examination of all evidence being proffered or being allowed to be proffered at the appropriate stages of litigation?**

Although allegedly not artfully pleaded, this Plaintiff's complaint and subsequent pleadings asserted numerous Constitutional violations, which, given a chance to bolster his claims, would force a jury trial.  (R.1-100>111; R.31-59>71).

> Normally, "[f]or example, a district court judge considering whether to dismiss a petition under Fed.R.Civ.P. 12(b)(6) for failure to state a claim must accept the allegations in the petition as true." Cooper v. Pate, 378 U.S. 546, 546, 84 S.Ct. 1733, 1734,12 L.Ed.2d 1030 (1964).

41

The District Court herein concluded instead that all of Plaintiff's assertions could not possibly be proven true, but "such a dispositive conclusion could not be judicially noticed." Scheuer v Rhodes, 416 U.S. 232, 94 S.Ct. 1683 (1974). This Plaintiff is "entitled to be heard more fully than is possible on a motion to dismiss a complaint… on the allegations of [his complaint], [he was] entitled to have them judicially resolved". Id.

Please see Ibarra v. Olivarri, 587 F.2d 677, 677 (5th Cir. 1979). This Plaintiff like the prisoner in Ibarra, supra alleged that he was denied "access to the law library, and that his law books and personal property were taken from him and never returned." (R.47-1>2; R.14; H.9-13). A district court must still conduct a sufficient inquiry into the complaint to be certain both legally and factually that the plaintiff has little or no chance of success. Id. "The petitioner's complaint, construed liberally as required by Haines v. Kerner, 1972, 404 U.S. 519,92 S.Ct. 594, 30 L.Ed.2d 652, adequately sets forth allegations that, if proved, may entitle him to some relief." Id.

> The District Court herein "made credibility choices without hearing witnesses testify, without observing their demeanor or hearing their testimony subjected to cross-examination. Factual disputes are not so resolved under our system of jurisprudence. Factual allegations may not be brushed aside as "beyond belief" by [this District Court's examination of] a complaint, affidavits and factual responses. [Johnson] must have his day in court". Taylor v. Gibson, 529 F.2d 709, 715-16 (5th Cir. 1976).

42

"However, where a prisoner claims a substantive deprivation of a constitutional right, such as a retaliation for exercising his legal right of access to the courts, the availability of state remedies provides no bar to federal court adjudication under § 1983. Hall v. Sutton, 755 F.2d 786, 787-788 (11th Cir.1985)." <u>Taylor v. McSwain</u>, 335 F. App'x 32, 33 (11th Cir. 2009) (per curiam) (cited in the District Court's final order herein.) (P Mtn Rply-1>10).

**VII.    Should pro se pleadings be dismissed when the prose of such is criticized by educated attorneys as being inartfully and untraditionally scripted?**

Pro se pleadings are to be held "to less stringent standards than formal pleadings drafted by lawyers". <u>Haines</u>, supra.    Dismissing this Plaintiff's complaint because the City Defendants demand that his prose style conform to that of educated and licensed attorneys is too extreme.    It is clearly evident that Plaintiff did not understand how to properly number his paragraphs and did not know what page limit on complaints that the District Court was accustomed to.    Furthermore, the City Defendants should have been required, at Plaintiff's request to the District Court, to comply with Rule 12(e) themselves to specifically describe what were "the details" they were missing to answer the claims that Plaintiff brought. Instead, the City Defendants "got away with murder" by simply crying to the Court that they could not "possibly understand" Plaintiff's claims.  (R.19-21, R.41-1-18). (P Mtn-7>9; P Mtn Rply-1>11).

43

**VIII.   Are U.S. citizens in the custody of State probation not entitled to apply for consideration of the "Great Writ" unless imprisoned?**

The District Court has endorsed the State of Georgia's recent adjudications that U.S. citizens in the custody of probation are not entitled to file for consideration of the "Great Writ" unless imprisoned. <u>Hunt v. Tucker</u>, N.D.Ala., 875 F.Supp. 1487, affirmed 93 F.3d 735 (1995).

The District Court ignored Plaintiff's motion for injunction after his Federal Habeas Corpus Petition was dismissed.  Plaintiff described in detail how his State Habeas Petition was dismissed "as moot" without due process and that he had filed application for appeal in the Supreme Court of Georgia.  (Inj Mtn-17>21, 75>163, 308>417; Inj Rply-10; R.47-1>14).   The State Habeas Court issued judgment dismissing Plaintiff's Petition for the Great Writ, without a due process hearing, through ex parte communication with the State's Attorney General.


**IX.    Does a Federal Court have the authority to order for bail to be set or to issue injunction for petty misdemeanor charges when there is likely no effective State judicial process to afford an accused timely appellate relief?**

Plaintiff's Habeas Petition was dismissed in the District Court due the "exhaustion requirement".  Plaintiff filed a motion for injunction and informed the District Court that the Superior Court of Spalding County dismissed his Habeas Petition as

44

"moot", that State probationers are not allowed a due process bond hearing in Spalding County, and that he had filed an application for appeal of the Spalding Court's Habeas dismissal.  (R.47; R.1-29>30; R.31-13>14).

> "[T]he most fundamental premise of the criminal justice system is that a person ought not to be punished for a criminal offense until the state demonstrates guilt beyond a reasonable doubt; unless the right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." Ayala v. State, 262 Ga. 704, 425 S.E.2d 282 (1993).

> "While a trial court is free to exercise its discretion in determining whether or not to grant bond, it is not free to refuse to exercise its discretion or to provide a defendant the opportunity to be heard on the issue in an evidentiary hearing." Knapp v. State, 223 Ga. App. 267, 477 S.E.2d 621 (1996).

> "In misdemeanor cases, the right to bail is generally secured by statute, being available as a matter of right before a court of inquiry as well as after an individual is indicted and after a motion for new trial is made."

> Quoting Ayala v. State, 262 Ga. 704, 425 S.E.2d 282 (1993): "The trial court may release a person on bail if the court finds the person:

> (1) Poses no significant risk of fleeing from the jurisdiction of the court or failing to appear in court when required;

> (2) Poses no significant threat or danger to any person, to the community, or to any property in the community;

> (3) Poses no significant risk of committing any felony pending trial; and

> (4) Poses no significant risk of intimidating witnesses or otherwise obstructing the administration of justice.

> OCGA § 17-6-1(e). The trial court must explain its reasons for denying bond to assist appellate review."  Additionally, the trial court is required to reduce to writing its determination for all four aforementioned considerations for appellate review.  Knapp, supra and Ayala, supra.

45

As a probationer of the Georgia Department of Corrections, Plaintiff was never given a due process bond hearing for the crimes that he was arrested for and accused of. Probationers in Spalding County, Georgia are not allowed to have proper bond hearings. (R.14). Instead, with his Constitutional Rights to bail extinguished by the Georgia agents, Plaintiff served six months in jail for petty misdemeanors that he was later found not guilty of. (R.47-3; R.3-1>4; R.3-1-1>19; R.3-2-1>3).

With no opportunity for a proper bail/bond hearing, the District Court could have ordered the State Court to conduct one for Plaintiff. (R.31-14>18; R.13-7>13). In order to render State remedies truly effective, a Federal Court can order a State Court to release a prisoner on bond. "The release on bail shall continue until he has fully exhausted his State, and if necessary, his Federal remedies." Boyer v. City of Orlando, 402 F.2d 966 (5th Cir. 1968). Green v. Orlando, 313 F.Supp. 583 (1970). (Inj Mtn-3,6,12>21; Inj Rply-10>11).

A Federal Court does have the power to grant prospective injunctive relief when there is no effective remedy in State Courts and when Due Process or other Constitutional Rights are being systematically and needlessly violated. Monroe v. Pape, supra; Erdmann v. Stevens, supra; Law Students Civil Rights Research Council, Inc., v. Wadmond, supra; Pulliam v. Allen, supra; Mitchum v. Foster, supra.

**X.    Should a Federal Court, according to the exhaustion requirement, yield to a State's sovereignty as "a matter of comity rather than a matter of [Federal] jurisdiction", without considering the exception to take judicial notice of a voided or unconstitutional sentencing order?**

The District Court dismissed Plaintiff's Federal Habeas Petition due to the exhaustion requirement. However, it should have been clear to the Court that it could have taken judicial notice of Plaintiff's September 16th, 2011 sentence being a voided sentence with the imposition of the new sentence he consented to on May 9th, 2013, that revoked the September 16th, 2011, "original sentence". (Inj Mtn-2>3; H.9-10>13; R.35-69>77). Thompson v State, 240 GaApp 198, 523 SE2d 53 (1999); Fulp v State, 217 GaApp 603, 458 SE2d 395 (1995); Huff v McLarty, 241 Ga 442, 246 SE2d 302 (1978); Hulen v State, 207 GaApp 465, 428 SE2d 405 (1993); Marneigh v State, 271 Ga 883, 525 SE2d 362 (2000) (affirmed Thompson, Fulp, Huff, and Hulen, supra).

Further, the Court could have taken judicial notice of the fact that the State Defendant offered a plea bargain for the "original sentence" to two charges, one of the other charges being a "lesser and included offense" of the other charge (double jeopardy, or a void conviction). (R.1-32>41; R.20-5>6; R.35-23>34). In the past, this same Atlanta Division of the District Court judicially noticed a voided

47

sentence and, to prevent a miscarriage of justice, using a Georgia precedent, issued an immediate relief order.  Please <u>Green v. State of Georgia</u>, case # 1:11-cv-04544-AT, Doc. 23, pg. 16-17, quoting <u>Nazario v. State</u>, 746 S.E.2d 109, 113 (Ga. 2013). Please see R.49-11, wherein Plaintiff cited <u>Nazario</u>, supra.  (Inj Mtn- 403).

> "[T]he exhaustion requirement is "a matter of comity rather than a matter of jurisdiction… the exhaustion rule requiring dismissal of mixed petitions, though to be strictly enforced, is not jurisdictional… <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, (1984).  Exceptions to the exhaustion rule exist. Id. <u>Tillman v. Massey</u>, 281 Ga. 291, 637 S.E.2d 720 (2006) (GA precedent applying <u>Strickland</u>, supra to fundamentally unfair process to appellate review).

So, to prevent a miscarriage of Justice, the District Court, could have issued injunctive relief to this Plaintiff.  (Inj Mtn-1>3,10>21).


### XI.     Is the obstruction of Due Process access to the Courts a viable claim in Federal Courts?

Plaintiff had repeatedly pleaded to the District Court about the State's escapades to restrict him from filing and receiving Court pleadings in jail.  (R.14; R.19-1>4; H.9-1>3; H.9-10>85; R.28).  He further informed the District Court of his denials of due process in the State Courts.  (H.9-18). Plaintiff was denied his Due Process entitlement to a State Habeas Corpus hearing in Spalding County. The State's Attorney General simply e-mailed an ex parte proposed order to the probation Judge to deny Habeas relief.  (Inj Mtn- 75>80).   The same State

probation judge never entertained two motions in arrest of judgment filed by Plaintiff and other motions for bond hearings. (H.9-13>14; Inj Mtn- 231>237).

In lieu of entertaining Plaintiff's Petition for Habeas Corpus, the State's Spalding County probation judge held a revocation hearing petitioned for by the Habeas Respondent. The Habeas Respondent was Plaintiff's probation officer and a childhood friend of the State licensed police officer injured in the wreck involving Plaintiff's 2011 sentence in the Spalding County Court. (H.9-4). The State's Attorney General was required to answer the Habeas Petition for Respondent within 20 days of service. However, just after said 20 days, the State's probation officer (Respondent) arrested Plaintiff instead of answering the Habeas Petition. The Habeas hearing was finally scheduled after Plaintiff was sent to the State's probation detention center and was rescheduled twice (dates after Plaintiff "did his time").

At the time, Appellant had filed an active law suit against the Spalding County Attorney and a previous Spalding County Commissioner. Said suit was docketed in the United State Supreme Court. Johnson v. Regions Bank, Beck, Owen and Murray, Et al., case # 13-8955. Johnson v. Regions Bank, Et al., 301 Ga.App. 520, 687 S.E.2d 906 (2009). (H.9-3; H.9-10; H.9-16>17). Said case, nearly 11 years old, was dismissed because the State's Correctional Officers would

not allow Appellant to receive Court correspondence while in the State's probation detention center.

The same Spalding County Staff Attorney appeared, in the front row of the Court house right behind Appellant, at Appellant's revocation hearing on April 1st, 2014, after the State's District Attorney was allowed recess to find case law to rebut Appellant's Motion to Dismiss Probation Warrant and when the revocation Judge mysteriously and suddenly changed his mind to find Appellant's ambiguous sentence of May 9th, 2013 to no longer be ambiguous.  (H.9-10>13).

The same State Spalding County Habeas and probation judge never required the State to answer Plaintiff's State Petition for the Great Writ.  As a matter of fact, instead of filing an answer within 20 days after being served as required by Georgia Law, the State Attorney General filed a motion to dismiss the State Petition as "moot" 139 days after service.  After scheduling the Habeas hearing three times and the Attorney General not in attendance for the third scheduled hearing, this same Habeas Judge granted the State's motion to dismiss as "moot" through an ex parte proposed order e-mailed by the State Attorney General's office.

While at the State's probation detention center, Plaintiff requested that he be allowed his Constitutional Rights to access to his Court pleadings to answer the U.S. Supreme Court pleadings, prepare for his State Habeas hearing scheduled, file

for relief in the State Courts, and answer his pleadings in the Federal District Court. Instead, Plaintiff was cursed at like a dog by State Correctional Officers who "impounded" his Court pleadings and obstructed him from filing in the Courts. (H.9-23>30). Plaintiff subpoenaed video surveillance of the actions of the State Correctional officers, but the State's same probation/Habeas judge of Spalding County quashed the subpoena on an ex parte motion from the State Attorney General faxed directly to the judge's office.

> "Where the prisoner alleged he was denied "access to the law library, and that his law books and personal property were taken from him and never returned... [t]he petitioner's complaint, construed liberally... adequately [set] forth allegations that, if proved, may [have entitled] him to some relief... [and] that [he] must be afforded some opportunity to bolster his claims with proof." <u>Ibarra v. Olivarri</u>, 587 F.2d 677, 677 (5th Cir. 1979). (P Mtn Rply-11; R.47; R.49).

> "Access to the courts is also a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment. Chappell v. Rich, 340 F.3d 1279, 1282 (11th Cir.2003). "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977)...
> However, where a prisoner claims a substantive deprivation of a constitutional right, such as a retaliation for exercising his legal right of access to the courts, the availability of state remedies provides no bar to federal court adjudication under § 1983. Hall v. Sutton, 755 F.2d 786, 787-788 (11th Cir.1985)." <u>Taylor v. McSwain</u>, 335 F. App'x 32, 33 (11th Cir. 2009) (per curiam) (cited in the District Court's final order herein.) (P Mtn Rply-11; Inj Mtn-12>13).

When Plaintiff was released from the State's probation detention center, he filed applications for criminal warrants against the State's correctional officers for disorderly conduct (use of fighting words). (R.35-49>60). The State probation judge had revoked Plaintiff's probation again to send him to the detention center with a charge of disorderly conduct. The State licensed police officer from Kennesaw had alleged that Plaintiff said, "This is fu—ing bulls-it" after he regained consciousness from being knocked out and having his eye blackened by the arresting officers for not providing a driver's license or answering their questions. The warrants against the State's officers were denied for a Georgia law that is arbitrarily, discriminately, and discretionarily enforced in the State of Georgia. Rumor has it that the same probation detention center was closed for physical abuse of probationers.

**XII.   Can a State, when bringing new accusations of crimes, through its own administrative systems, circumvent the substantive component of the Due Process Clause to avoid long standing Federal precedents of fundamental Rights to Liberty interests and a fair trial that afford an accused the protections of the United States Constitution?**

The Probation Division of the State of Georgia has imprisoned Plaintiff sixth months for crimes he did not commit, the driver's license arrests and accusations

herein. (R.1-81>82; R.31-13). In doing so, the State simply petitioned through its Courts that Plaintiff violated condition one of probation, which states "Do not violate the criminal laws of any governmental unit." The State's process circumvented nearly all of the adequate procedural protections in a Constitutional criminal proceeding.

The State of Georgia has developed a scheme whereby it can imprison probationers for accusations of new crimes at administrative hearings. (H.9-20>30; R.35-21>23; R.35-49>60; R.35-77>90; R.47; R.49). In such setting, the probationer is presumed guilty until proven innocent, with no opportunity for bail to be set for misdemeanor charges. (R.1-29>30). With these hearings, the State pre-empts jury trials to go ahead and convict probationers of new crimes, regardless if they be found innocent at jury trials later. (H.9-9>10). Essentially, convictions for new accusations of crimes are quickly rendered on a preponderance of evidence standard, by the probation judge, at a bench trial. Usually, the only evidence allowed to be tendered is the testimonies of the probation officer, arresting officers, and probationer.

Herein, Plaintiff was charged by the State with vague accusations like "committed the offenses of obstruction of an officer... and... failure to show identification." No statute or ordinance numbers were listed in the accusations. (Inj Mtn-5>10). Neither were any details or elements of the crime described in the

accusations.  Next, Plaintiff was provided with State public defenders, who would arrive just before the hearing, wanting a guilty plea.  They would advise Plaintiff that he was not entitled to present evidence at the hearings, that he was not entitled to have exculpatory evidence revealed by the prosecution, that he was not entitled to have bail set, that he could be found guilty with only a preponderance of evidence instead of beyond a reasonable doubt, and that he was not entitled to representation on appeal.  (R.47; R.49; H.9-1>3; H.9-10>85).

These administrative hearings are typically a "slam dunk" by the State because just the arresting officer and probation officer testify against the probationer in front of the State's probation Judge.  Without the adequate procedural protections in a Constitutional criminal proceeding, the Judge almost always rules in the favor of his police, State probation officers, and State prosecutors.

Herein, Plaintiff's first offender treatment was revoked on the basis that he was merely accused of a misdemeanor he never committed and was later adjudicated not guilty for (obstruction for failure to display identification card on demand and answer questions).  Plaintiff is now classified as a convicted felon for being involved in an automobile accident, a civil claim that Plaintiff fully satisfied.  Plaintiff has not been able to find meaningful employment due to this reclassification by the State of Georgia.  Nearly all employers currently conduct

54

criminal back ground checks on prospective employees. His ability to provide adequately for his family has been destroyed. He cannot vote. His 2nd Amendment Right to bear arms has been revoked.

> "The Fifth Amendment's Due Process Clause forbids the Government to "depriv[e]" any "person ... of ... liberty ... without due process of law." "Freedom from imprisonment-from government custody, detention, or other forms of physical restraint-lies at the heart of the liberty that Clause protects... And this Court has said that government detention violates that Clause unless the detention is ordered in a criminal proceeding with adequate procedural protections." Devi v Mukasey, 2008 WL 5412011, Not Reported in F.Supp.2d, United States District Court, E.D. California, No. 2:08–cv–2671 JFM (HC), Dec. 22, 2008.

> "A person in community custody "can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." Morrissey v. Brewer, 408 U.S. 471, 488–89, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). An end to this liberty is surely a 'grievous loss,' and "the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment." Id.

Can State probation be used as a subterfuge for criminal investigations and prosecutions? A criminal defendant has the right to be informed of the nature and cause of the accusation against him. Therefore, an indictment must allege all the ingredients of the crime to such a degree of precision that it would allow the accused to assert double jeopardy if the same charges are brought up in subsequent prosecution. United States v. Cruikshank, 92 U.S. 542 (1876).

> "The Supreme Court held in United States v. Carll, 105 U.S. 611 (1881) that "in an indictment ... it is not sufficient to set forth the offense in the words of the statute, unless those words of themselves

fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." Vague wording, even if taken directly from a statute, does not suffice. The Fourteenth Amendment right to due process and the Sixth Amendment right to trial by jury, taken together, entitle a criminal defendant to a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt. E. g., In re Winship, 397 U. S. 358, 364. The historical foundation for these principles extends down centuries into the common law.

In finding that the scheme at issue there did not run afoul of Winship's strictures, this Court did not budge from the position that (1) constitutional limits exist to States' authority to define away facts necessary to constitute a criminal offense, 477 U. S., at 85-88, and (2) a state scheme that keeps from the jury facts exposing defendants to greater or additional punishment may raise serious constitutional concerns". Apprendi v. New Jersey, 530 U.S. 466 (2000).

"'The requirement that guilt of a criminal charge be established by proof beyond a reasonable doubt dates at least from our early years as a Nation. The demand for a higher degree of persuasion in criminal cases was recurrently expressed from ancient times, [though] its crystallization into the formula 'beyond a reasonable doubt' seems to have occurred as late as 1798. It is now accepted in common law jurisdictions as the measure of persuasion by which the prosecution must convince the trier of all the essential elements of guilt.'

C. McCormick, Evidence § 321, pp. 681-682 (1954); see also J. Wigmore, Evidence § 2497 (3d ed.1940). Although virtually unanimous adherence to the reasonable doubt standard in common law jurisdictions may not conclusively establish it as a requirement of due process, such adherence does 'reflect a profound judgment about the way in which law should be enforced and justice administered.' Duncan v. Louisiana, 391 U. S. 145, 391 U. S. 155 (1968).

Expressions in many opinions of this Court indicate that it has long been assumed that proof of a criminal charge beyond a reasonable doubt is constitutionally required. See, for example, Miles v. United States, 103 U. S. 304, 103 U. S. 312 (1881); Davis v. United States, 160 U. S. 469, 160 U. S. 488 (1895); Holt v. United States, 218 U. S. 245, 218 U. S. 253 (1910); Wilson v. United States, 232 U. S. 563, 232 U. S. 569-570 (1914); Brinegar v. United States, 338 U. S.

160, 338 U. S. 174 (1949); Leland v. Oregon, 343 U. S. 790, 343 U. S. 795 (1952); Holland v. United States, 348 U. S. 121, 348 U. S. 138 (1954); Speiser v. Randall, 357 U. S. 513, 357 U. S. 525-526 (1958). Cf. Coffin v. United States, 156 U. S. 432 (1895)." In re Winship, 397 U. S. 358 (1970).

"With these concerns in mind, we note the dangers that could arise if a notice says too little about the law that the offender allegedly fails to obey. To begin with, an offender needs to know DOC's legal theory in order to prepare an adequate defense. Because laws vary so widely, the strategic choices that an offender makes in "present[ing] witnesses and documentary evidence" will necessarily be tied to the particular definition of the crime that he or she allegedly committed. Morrissey, 408 U.S. at 489, 92 S.Ct. 2593. In the absence of a vigorous defense against the allegations, the risk increases that a hearing officer will base a reclassification decision on inaccurate information about the offender's behavior. An innocent offender might be erroneously deprived of his conditional liberty and taken out of rehabilitative community custody programs...

An offender whose liberty is in jeopardy should not be misled, subjected to guessing games, or asked to hit a moving target. The realization of these dangers would harm the individual's protected interest in liberty and society's interest in rehabilitating law-abiding offenders.

We hold that for DOC to lawfully reclassify an offender for imprisonment for a violation of an "obey all laws" condition of community custody, the notice must allege the facts and legal elements that DOC would have to prove to show an offender did not obey all laws. "[N]otice of the specific statute guarantees the fairest opportunity for the defendant to isolate the various elements of the crime and present facts in his defense." Havier, 155 F.3d at 1094. Although a notice may state the elements, a citation to the statute suffices if the statute includes all of the elements. If the statute does not include all of the elements, the notice must indicate the nonstatutory elements that would render the offender's conduct unlawful...

Because DOC was left free to pursue alternative legal theories at the hearing, the hearing officer could mistakenly base, and did base, his decision on an unconstitutional subsection. Further, Blackburn might have been uncertain about the law for which he had to prepare a

57

defense. There was a risk that an offender who did not breach his community custody conditions was sent back to total confinement. The notice standard we have described insures against such risks, and by failing to meet the standard, DOC committed constitutional error." In Re Blackburn, 168 Wash.2d 881, 232 P.3d 1091 (2010).

"In a long line of cases that includes Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), this Court has recognized that the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial. The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause". Strickland v. Washington, 466 U.S. 668, 104 S.Ct.

When the State Defendant's probation division imprisoned Plaintiff for the unconstitutional "charges" in Kennesaw, Plaintiff and his family were evicted from their home.  Because of this, Plaintiff's tax records were lost and he could not provide proof of lack of income to qualify for a public defender for the three jury trials of the Hiram and Kennesaw charges.  When Plaintiff was eventually allowed his Right to three of the jury trials for these three illegal arrests, acting pro se, Plaintiff was able to obtain non-guilty convictions for all the "charges".  At the probation administrative hearing, Plaintiff was provided a State public defender that provided destructive rather than effective assistance of counsel.  (H.9-13; R.47; R.49).

The Sixth Amendment guarantees a right to an impartial jury trial. Ballew v. Georgia, 435 U.S. 223 (1978).  The Due Process Clause of the 14th Amendment of the Constitution of the United

58

States imposes an obligation on the prosecution to disclose to the defense items of evidence which may be exculpatory or helpful to the Defendant.  <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  (Inj Mtn-4>10,13>14; R.35-97).

Herein, Plaintiff was imprisoned administratively and pre-emptively to jury trials.  His public defenders at the administrative hearings wrongfully advised Plaintiff that he was not entitled to exculpatory evidence in his defense.

**XIII. Can a State, through a plea bargain, arbitrarily deprive a U.S. citizen of Federal Constitutional Rights without explicitly informing the accused of such?**

The only Constitutional Rights that Plaintiff surrendered at his September 16th, 2011, plea bargain was his agreement to allow warrantless searches by State probation agents with probable cause to do so.  Plaintiff did not surrender and was not explicitly informed by the Court that he would lose any other Constitutional protections in a criminal investigation, prosecution, or proceeding.  Hence, the State cannot arbitrarily deprive Plaintiff of said rights without his explicit waiver of such in open Court.  <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969).  (Inj Mtn-7>10; R.1-9>15; R.31-41>43).

59

## XIV. Can a State take custody of a parent's child on the basis of mere accusations of misdemeanors even after the parent has later been adjudicated as being not guilty of said accusations?

"The due process clause requires that severances in the parent-child relationship caused by the state occur only with rigorous protections for the individual liberty interests at stake. The state may not separate the parent from the child, even temporarily, without according them due process of law to protect their liberty interests." Russ v. Watts, 414 F.3d 783 (2005). (Inj Mtn-10>11).

A person in community custody "can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." Morrissey v. Brewer, 408 U.S. 471, 488–89, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). An end to this liberty is surely a 'grievous loss,' and "the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment." Id.

"The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life." Santosky v. Kramer, 455 U.S. 745 (1982).

This Plaintiff was collaterally subjected to Georgia's administration process to rob him of custody of his daughter. Plaintiff was forced into a very heated legal battle. He was ultimately required to file a motion to disqualify a State Judge who repeatedly and systematically violated his Constitutional Rights. With a new Judge, Plaintiff was finally able to regain custody of his daughter. (Inj Mtn-212>213, 418>664; R.36; R.39).

60

## **CONCLUSION**

All the aforementioned reasons show that Appellant was denied his Constitutional Rights to a Jury Trial.

**WHEREFORE,** Appellant respectfully demands the following relief:

a. That this Honorable Court reverse the District Court's decisions to dismiss his Complaint;

b. That the Honorable Court hold that all of the Appellees are subject to prospective injunctive relief;

c. That the Honorable Court Grant Appellant's Motion For Injunction Or Temporary Injunction filed herein this Court;

d. And that the Court grant Appellant any further relief that is appropriate.

Respectfully submitted, this __21st__ day of __December__ 2015.

William Johnson, pro se
Plaintiff

487 Pine Valley Rd.
Meansville, GA 30256
(770)468-3134

61

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

WILLIAM JOHNSON,                        \*
                                        \*
    Plaintiff,                      \*
                                        \*    CASE NO.: 1:13-cv-3155-wsd
vs.                                     \*
                                        \*
STATE OF GEORGIA,                       \*
CITY OF KENNESAW                        \*
and CERTAIN AGENTS FOR SUCH,            \*
CITY OF HIRAM                           \*
And CERTAIN AGENTS FOR SUCH,            \*
CITY OF NEWNAN                          \*
And CERTAIN AGENTS FOR SUCH             \*
    Defendants.                     \*
                                        \*

## CERTIFICATE OF COMPLIANCE

This is to certify that this brief complies with Federal Rule of Appellate Procedure 32(a)(7). This brief is submitted in 14-point Times New Roman font, and it contains 13,986 words.

Respectfully submitted, this __21st__ day of __December__, 2015

487 Pine Valley Rd.                     William Randy Johnson
Meansville, GA 30256                    Pro Se Plaintiff
(770)468-3134

62

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

WILLIAM JOHNSON,                          *
                                          *
     Plaintiff,                        *
                                          *
                                          *          CASE NO.: 1:13-cv-3155-wsd
vs.                                       *
                                          *
STATE OF GEORGIA,                         *
CITY OF KENNESAW                          *
and CERTAIN AGENTS FOR SUCH,              *
CITY OF HIRAM                             *
And CERTAIN AGENTS FOR SUCH,              *
CITY OF NEWNAN                            *
And CERTAIN AGENTS FOR SUCH               *
     Defendants.                       *
                                          *
_____   *

## CERTIFICATE OF SERVICE

I hereby certify that today I served a true and accurate copy of this APPELLANT BRIEF by depositing such in the U.S. Mail with first class postage prepaid in manner demanded by this Court's Federal Statutes and Rules to the following persons and addresses listed below and, also certify that this pleading complies with the type size and volume limitations of this Court. I also hereby certify that there are 13,986 words of narrative, herein, governed by this Court's limitations.

Roger A. Chalmers              Gray, Rust, St. Amand, Moffett & Brieske, LLP
State Law Department           1700 Atlanta Plaza
40 Capital Square SW           950 East Paces Ferry Road
Atlanta, GA 30334              Atlanta, GA 30326

Respectfully submitted, this __21ˢᵗ__ day of __December__, 2015

487 Pine Valley Rd.                    William Randy Johnson
Meansville, GA 30256                   Pro Se Plaintiff
(770)468-3134

63